IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

> FILED
> IN OPEN COURT
>
> JUN 2 9 2017
>
> CLERK, U.S. DISTRICT COURT
> ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **(UNDER SEAL)** |
| | ) |
| v. | ) CRIMINAL NO. 1:17-CR-147 |
| | ) |
| | ) Count 1: Conspiracy to Distribute Five |
| MARISELA FLORES-TORRUCO, | ) Kilograms or More of Cocaine |
| a/k/a "La Dama de Hierro," | ) Knowing and Intending and |
| | ) Having Reasonable Cause to |
| JOSE FRANCISCO MENDOZA-GOMEZ | ) Believe that it will be |
| a/k/a "Braulio-Jelipe," | ) Unlawfully Imported into the |
| | ) United States |
| ALFONSO PADILLA-FLORES | ) (21 U.S.C. §§ 959(a), 963) |
| a/k/a "Poncho," | ) |
| a/k/a "CR7," | ) |
| | ) Forfeiture Notice: 21 U.S.C. §§ 853 & 970 |
| JOSE PADILLA-FLORES | ) |
| a/k/a "Pepe," | ) |
| a/k/a "Goni," | ) |
| | ) |
| QIYUN CHEN, | ) |
| a/k/a "Chinaloa," | ) |
| a/k/a "Su Chen," | ) |
| a/k/a "La China," | ) |
| a/k/a "China." | ) |

Defendants.

# INDICTMENT

JUNE 2017 TERM - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

## COUNT ONE
(Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing
and Intending and Having Reasonable Cause to Believe that it would be Unlawfully Imported

into the United States)

From in and around 2016 and continuing thereafter up to and including the date of this

Indictment, the exact dates being unknown to the Grand Jury, within the jurisdiction of the

United States and in an offense begun and committed outside the jurisdiction of a particular State

or district, including in Mexico, Colombia, Panama, and the United States, and elsewhere, the

defendants Marisela FLORES-TORRUCO (also known as "La Dama de Hierro"), Jose Francisco

MENDOZA-GOMEZ (also known as "Braulio-Jelipe"), ALFONSO PADILLA-FLORES (also

known as "Poncho," also known as "CR7"), JOSE PADILLA-FLORES (also known as "Pepe,"

also known as "Goni"), Qiyun CHEN (also known as "Chinaloa," also known as "Su Chen," also

known as "La China," also known as "China"),[1] who will be first brought to the Eastern District

of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with

others, known and unknown to the Grand Jury, to knowingly and intentionally distribute five

kilograms or more of a mixture and substance containing a detectable amount of cocaine, a

Schedule II controlled substance, knowing and intending and having reasonable cause to believe

that such substance would be unlawfully imported into the United States, in violation of Title 21,

United States Code, Sections 959(a), 960(a), and 963.

---

[1] Each defendant will be referred to herein by the portion of his or her name that is in all capitalized letters in this paragraph.

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.      The FLORES-TORRUCO Drug Trafficking Organization (FLORES-TORRUCO DTO) is based in Mexico and provides logistical and financial support to traffickers seeking to move multi-hundred kilogram quantities of South American cocaine, valued at millions of U.S. dollars, through Central America, Mexico and, ultimately, into the United States.   The FLORES-TORRUCO DTO financially supports maritime shipments of large quantities of cocaine from Colombia into Panama.   From Panama, the cocaine is transported into Mexico, where a network of associates transports the cocaine north to the border with the United States. Simultaneously, the organization conducts financial transactions in the United States, Mexico, Colombia, and elsewhere, to ensure money, often U.S. Dollars, is available to fund ongoing drug-trafficking activities.

2.      Colombia is the source of the overwhelming majority of cocaine in the United States.   DTOs, like the FLORES-TORRUCO DTO, generally transport Colombian cocaine to Central America and Mexico by sea or air, and then the cocaine is moved north over land into the United States.   Approximately 70% of Colombian cocaine is transported through the Pacific Ocean and into Central America.   During the first six months of 2015, approximately 90% of the cocaine trafficked into the United States first transited through Central America and Mexico. Due to its proximity to Colombia, and maritime infrastructure, Panama is a major transit country for Colombian cocaine.   Generally, Colombian cocaine is trafficked into Mexico and delivered to organizations capable of moving it north and across the border with the United States.

3

3.     The price of cocaine increases at each stage of the supply chain as it is transported north from Colombia.   The incremental price increases enable multiple drug traffickers to make substantial profits on the shipments of cocaine.

4.     Once cocaine reaches the United States, the proceeds resulting from its sale are remitted to traffickers along the supply chain and the sources of supply through a series of financial transactions and bulk-cash smuggling.   It is common for such transactions to be conducted using U.S. Dollars or Mexican Pesos.

5.     Members of the FLORES-TORRUCO DTO perform various tasks and take on various roles in furtherance of the conspiracy.

  a) FLORES-TORRUCO financially and logistically supports individuals who traffic cocaine directly from Colombia into Panama and through Central America. FLORES-TORRUCO arranges for the resultant proceeds to be transported or transferred back along the supply chain.   FLORES-TORRUCO also orders members of the organization to use violence, including kidnapping and murder, in dealing with competitors;

  b) MENDOZA-GOMEZ plans and coordinates the movement of cocaine and drug proceeds across the border between Mexico and the United States.   MENDOZA-GOMEZ further supports the DTO's goals by coordinating acts of violence with FLORES-TORRUCO.

  c) ALFONSO PADILLA-FLORES and JOSE PADILLA-FLORES both engage in drug-trafficking activities at the direction of FLORES-TORRUCO.   These include traditional drug-trafficking activities like moving cocaine and currency,

4

but also planning acts of violence against competing drug traffickers.

    d) An unindicted co-conspirator (UCC-1) is based in Colombia and arranges maritime shipments of Colombian cocaine to Panama with the aid of the FLORES-TORRUCO DTO.   Once the cocaine reaches Panama, UCC-1 arranges transport through Central America and into Mexico.

    e) CHEN is based in Mexico and is responsible for organizing financial transactions involving drug proceeds on behalf of the FLORES-TORRUCO DTO.   In return, CHEN receives a percentage of the currency involved in the transactions.

### WAYS, MANNERS AND MEANS OF THE CONSPIRACY

The primary purpose of this conspiracy is to make as much money as possible by trafficking cocaine from Colombia into Central America and Mexico, and ultimately into the United States.   The defendants and their co-conspirators used the following ways, manners and means, among others, to carry out this purpose:

6.    It was part of the conspiracy that the defendants and their co-conspirators played different roles, took upon themselves different tasks, and participated in the affairs of the conspiracy through various criminal acts.

7.    It was part of the conspiracy that the FLORES-TORRUCO DTO financed the shipment of multi-hundred kilogram quantities of cocaine, from Colombian sources of supply, through Central America and Mexico.

8.    It was part of the conspiracy that the FLORES-TORRUCO DTO operated in southeastern Mexico, near the border with Guatemala, to facilitate the shipment of Colombian cocaine into Mexico.   It was further part of the conspiracy that members of the FLORES-

TORRUCO DTO communicated with unindicted co-conspirators to financially and logistically coordinate such shipments.

9.     It was part of the conspiracy that members of the FLORES-TORRUCO DTO in northern Mexico, along the border with the United States, coordinated the trafficking of cocaine and currency across the border with the United States.    It was further part of the conspiracy that members of the FLORES-TORRUCO DTO communicated with unindicted co-conspirators to financially and logistically coordinate such shipments.

10.    As part of the conspiracy, the FLORES-TORRUCO DTO obtained and trafficked cocaine with recurring "brand" marks and packaging.

11.    The FLORES-TORRUCO DTO was a frequently used Mexico-based trafficking organization for UCC-1.

12.    It was part of the conspiracy that CHEN would organize financial transactions and the transportation of drug proceeds on behalf of the FLORES-TORRUCO DTO.    It was further part of the conspiracy for CHEN to charge FLORES-TORRUCO a percentage rate for these services.

13.    It was part of the conspiracy that members and associates of the FLORES-TORRUCO DTO, including FLORES-TORRUCO and CHEN, would authorize financial transactions, including those in U.S. dollars, in furtherance of drug-trafficking by sharing the serial number of individual items of currency.    The presentation of currency bearing the specifically shared serial number acted as a receipt to confirm the authorization to provide requested funds.

14.    It was part of the conspiracy that the FLORES-TORRUCO DTO relied on

6

violence, including kidnapping and murder, as a means of intimidation and retaliation to further the objectives of the conspiracy.

15.    It was further part of the conspiracy for members of the FLORES-TORRUCO DTO to coordinate with corrupt public officials to both impede law enforcement investigations effecting the DTO and facilitate violence against competitors.

<u>ACTS IN FURTHERANCE OF THE CONSPIRACY</u>

In order to further the goals and purposes of the conspiracy, the defendants and their co-conspirators committed overt acts, including, but not limited to, the following:

16.    In and around March 2017, CHEN communicated with FLORES-TORRUCO about conducting financial transactions in Colombia in U.S. Dollars.   In furtherance thereof, CHEN shared with FLORES-TORRUCO a telephone number, name, and the serial number from an item of Mexican currency.

17.    On or about March 27, 2017, FLORES-TORRUCO communicated with CHEN about FLORES-TORRUCO's intent to conduct drug-trafficking activity in Houston, Texas, and New York.   CHEN offered to conduct financial transactions in support of FLORES-TORRUCO's drug-trafficking activities in New York in exchange for 6.5% of the funds involved in these transactions.

18.    In and around May 2017, the FLORES-TORRUCO DTO caused two shipments of cocaine to be transported from Colombia to Panama, totaling approximately 1,064 kilograms. These shipments of cocaine were seized by law enforcement in Panama in and around May 2017.

19.    In and around June 2017, the FLORES-TORRUCO DTO caused a shipment of cocaine in Panama, totaling approximately 197 kilograms.   This shipment was seized by law

enforcement in Panama in and around June 2017.

20.    In and around May 2017, the FLORES-TORRUCO DTO caused family members of a competing drug-trafficker to be held captive at or near Monterey, Mexico, as collateral for a drug-related debt.

21.    On or about June 5, 2017, FLORES-TORRUCO communicated with MENDOZA-GOMEZ about an approximately 500 kilogram shipment of cocaine that the FLORES-TORRUCO DTO trafficked along a route from at or near Vera Cruz, Mexico, to a location at or near Mexico City, Mexico.

22.    On or about May 29, 2017, JOSE PADILLA-FLORES communicated with FLORES-TORRUCO regarding the trafficking of approximately 300 kilograms of cocaine at or near Monterrey, Mexico.

(All in violation of Title 21, United States Code, Section 963.)

## FORFEITURE NOTICE

THE GRAND JURY HEREBY FINDS probable cause that the property described in this

NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein.

Pursuant to Fed.R.Crim.P. 32.2(a), the defendants, are hereby notified that if convicted of

Count One of this Indictment, they shall forfeit to the United States, pursuant to Title 21, United

States Code, Sections 853(a) and 970, any property constituting, or derived from, any proceeds

each defendant obtained, directly or indirectly, as the result of such violation; and any of the

defendant's property used, or intended to be used, in any manner or part, to commit, or to

facilitate the commission of, such violation.    The property subject to forfeiture includes at least

$62,000,000.00 in United States currency representing proceeds the defendants obtained in the

course of the drug conspiracy and property involved in the money laundering conspiracy, as

alleged in Count One of this Indictment.

(Pursuant to Title 21, United States Code, Sections 853 & 970 and Fed.R.Crim.P.32.2).

A TRUE BILL

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson

Dana J. Boente
United States Attorney

By:

David A. Peters
Special Assistant United States Attorney

Mary K. Daly
Assistant United States Attorney