FILED
IN OPEN COURT

NOV - 8 2017

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **(UNDER SEAL)** |
| ) | |
| v. ) | No. 1:17-CR-147 |
| ) | |
| QIYUN CHEN, ) | The Honorable Leonie M. Brinkema |
| ) | |
| a/k/a "Chinaloa," ) | |
| a/k/a "La China," ) | |
| a/k/a "Su Chen," ) | |
| a/k/a "Susy Chen," ) | |
| a/k/a "Gucci #1," ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The United States and the Defendant, QIYUN CHEN (hereafter "CHEN"), stipulate that the allegations in the criminal information and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1.  From in and around 2016, and continuing through in and around July 2017, within the jurisdiction of this Court, the defendant, QIYUN CHEN, did unlawfully, knowingly and willfully combine, conspire and agree with others, both known and unknown, to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, that is: to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity; that is, the distribution of five kilograms or more of a mixture containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending and having reasonable cause to believe that it would be imported into the United States in violation of Title 21, United States Code, Sections 959(a) and 963; with

the intent to promote the carrying on of the conspiracy to distribute cocaine, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(h). Additionally, from in and around 2016, and continuing through in and around July 2017, within the jurisdiction of this Court, the defendant, QIYUN CHEN, did unlawfully, knowingly and willfully combine, conspire, and agree with others, both known and unknown, to commit an offense against the United States in violation of Title 18, United States Code, Section 1956, that is: to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity; that is, the distribution of five kilograms or more of a mixture containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending and having reasonable cause to believe that it would be imported into the United States in violation of Title 21, United States Code, Sections 959(a) and 963; knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the conspiracy to distribute cocaine, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956(h).

2.      During the relevant time-period, CHEN was part of a Mexico-based drug trafficking organization (DTO) (hereafter referred to as the Flores-Torruco DTO, after its leader: Marisela Flores-Torruco). This DTO operated primarily in Colombia, Central America, and Mexico. Its goal was to earn as much money as possible by obtaining and distributing large-scale quantities of cocaine. The DTO accomplished this goal by trafficking cocaine, or causing cocaine to be trafficked, into the United States, where its distribution would generate the highest profit. The

DTO relied on Colombian sources of supply and other Central American drug traffickers for its cocaine inventory. New shipments of cocaine, often totaling hundreds of kilograms, normally required financing in advance of its release to the FLORES-Torruco DTO.

3. Like the rest of the DTO, CHEN was based in Mexico. Her role was to facilitate the availability of large sums of cash, often in United States Dollars, for the DTO to purchase new shipments of cocaine. Additionally, CHEN facilitated the transfer of the profits generated from the sale of cocaine in the United States to the DTO in Mexico. CHEN received a percentage of the funds involved in each transaction as compensation.

4. To fulfill her role, CHEN communicated directly with Marisela Flores-Torruco about her organization's financing needs. CHEN would then communicate with individuals in the United States, Mexico, Colombia, and elsewhere, who could facilitate the availability of large-sums of cash, often in United States Dollars, to meet the DTO's needs.

5. CHEN committed acts as a member of the Flores-Torruco DTO that include, but are not limited to, the following:

    a. In and around March 2017, at the request of Marisela Flores-Torruco, CHEN caused $150,000 in United States Currency to be available to satisfy a drug-related debt of the DTO in Colombia;

    b. In and around March 2017, CHEN offered to facilitate the movement or transfer of the DTO's profits in the United States. Specifically, CHEN offered to facilitate the movement or transfer of DTO profits in New York in exchange for 6.5% of the funds involved in each transfer;

    c. In and around May 2017, CHEN attended a meeting in Cancun, Mexico, with members of the FLORES-Torruco DTO, including Marisela FLORES-Torruco, and a representative of the DTO's Colombian source of supply.

6. During CHEN's involvement with the FLORES-Torruco DTO, the organization obtained, possessed, and distributed more than four-hundred fifty (450) kilograms of cocaine with the knowledge, and intent, and reasonable belief that it would be imported into the United States.

7. Though a member of the Flores-Torruco DTO, CHEN also performed similar functions for other drug trafficking organizations. For example:

    a. In and around December 2016, CHEN met with UCC-1 in Cancun, Mexico, to discuss the projected 2017 financing needs for UCC-1's DTO;

    b. In and around March 2017, CHEN offered to arrange the transportation of drug proceeds on behalf of another unindicted co-conspirator (UCC-2) from Los Angeles, California, to Guatemala City, Guatemala, in exchange for 3% of the involved funds;

    c. In and around March 2017, CHEN caused $150,000 in drug proceeds located in Philadelphia, Pennsylvania, to be released to an associate of another unindicted co-conspirator (UCC-3).

8. The acts described above were done willfully and knowingly and with the specific intent to violate the law, and not by accident, mistake, inadvertence, or other innocent reason. This statement of fact does not contain each and every fact known to the defendant and to the United States, and it is not intended to be a full enumeration of all the facts surrounding the defendant's charges.

9. The defendant waives any rights that the defendant may have under Fed. R. Civ. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any proceeding.

Respectfully submitted,

Dana J. Boente
United States Attorney

Date: Nov. 8, 6/7

By: _____
David A. Peters
Special Assistant United States Attorney (LT)
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703)-299-3700
Fax: (703) 299-3850
david.peters@usdoj.gov

Katherine E. Rumbaugh
Assistant United States Attorney
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703)-299-3700
Fax: (703) 299-3850

Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that if the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 11/02/2017

_____
Qiyun Chen,
Defendant

Defense Counsel's Signature

I am the attorney for Defendant in this case, Qiyun Chen. I have carefully reviewed the above Statement of Facts with him. To my knowledge, her decision to stipulate to these facts is informed and voluntary.

Date: 11/02/2017

_____
Maria Jacob, Esq.
Counsel for Defendant