IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

OCT 17 2019

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **(UNDER SEAL)** |
| | ) |
| v. | ) CRIMINAL NO. 1:17-CR-147 |
| | ) |
| | ) <u>Count 1:</u>    Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending and Having Reasonable Cause to Believe that it will be Unlawfully Imported into the United States (21 U.S.C. §§ 959(a), 963) |
| JOSE FRANCISCO MENDOZA-GOMEZ a/k/a "Braulio-Jelipe," | ) |
| ALFONSO PADILLA-FLORES a/k/a "Poncho," a/k/a "CR7," | ) |
| JOSE PADILLA-FLORES a/k/a "Pepe," a/k/a "Goni," | ) <u>Forfeiture Notice:</u>    21 U.S.C. §§ 853 & 970 |
| and | ) |
| JESUS RAUDA-AVILA, a/k/a "F," a/k/a "J," a/k/a "Marlboro Man," | ) |
| Defendants. | ) |

**<u>SUPERSEDING INDICTMENT</u>**

OCTOBER 2019 TERM - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

<u>COUNT ONE</u>
(Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing or Intending or Having Reasonable Cause to Believe that it would be Unlawfully Imported into the United States)

From in and around 2016 and continuing thereafter up to and including the date of this

Superseding Indictment, the exact dates being unknown to the Grand Jury, within the jurisdiction

of the United States and in an offense begun and committed outside the jurisdiction of a particular State or district, including in Mexico, Colombia, Panama, the United States, and elsewhere, the defendants Jose Francisco MENDOZA-GOMEZ (also known as "Braulio-Jelipe"), ALFONSO PADILLA-FLORES (also known as "Poncho," also known as "CR7"), JOSE PADILLA-FLORES (also known as "Pepe," also known as "Goni"), Jesus RAUDA-AVILA (also known as "F," also known as "J," also known as "Marlboro Man")[1], who will be first brought to the Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960(a), and 963.

<u>GENERAL ALLEGATIONS</u>

At all times relevant to this Indictment:

1.      The FLORES-TORRUCO Drug Trafficking Organization (FLORES-TORRUCO DTO) is based in Mexico and provides logistical and financial support to traffickers seeking to move multi-hundred kilogram quantities of South American cocaine, valued at millions of U.S. dollars, through Central America, Mexico and, ultimately, into the United States. The FLORES-TORRUCO DTO financially supports maritime shipments of large quantities of cocaine from

---

[1] Each defendant will be referred to herein by the portion of his or her name that is in all capitalized letters in this paragraph.

2

Colombia into Panama. From Panama, the cocaine is transported into Mexico, where a network of associates transports the cocaine north to the border with the United States. Simultaneously, the organization conducts financial transactions in the United States, Mexico, Colombia, and elsewhere, to ensure money, often U.S. Dollars, is available to fund ongoing drug-trafficking activities.

2. Colombia is the source of the overwhelming majority of cocaine in the United States. DTOs, like the FLORES-TORRUCO DTO, generally transport Colombian cocaine to Central America and Mexico by sea or air, and then the cocaine is moved north over land into the United States. Approximately 70% of Colombian cocaine is transported through the Pacific Ocean and into Central America. Historically, as much as approximately 90% of the cocaine trafficked into the United States first transited through Central America and Mexico. Due to its proximity to Colombia, and maritime infrastructure, Panama is a major transit country for Colombian cocaine. Generally, Colombian cocaine is trafficked into Mexico and delivered to organizations capable of moving it north and across the border with the United States.

3. The price of cocaine increases at each stage of the supply chain as it is transported north from Colombia. The incremental price increases enable multiple drug traffickers to make substantial profits on the shipments of cocaine.

4. Once cocaine reaches the United States, the proceeds resulting from its sale are remitted to traffickers along the supply chain and the sources of supply through a series of financial transactions and bulk-cash smuggling. It is common for such transactions to be conducted using U.S. Dollars or Mexican Pesos.

5. Members of the FLORES-TORRUCO DTO perform various tasks and take on

3

various roles in furtherance of the conspiracy.

a) Marisela FLORES-TORRUCO, also known as "La Dama de Hiero," a co-conspirator not charged in this Superseding Indictment, financially and logistically supported individuals who traffic cocaine directly from Colombia into Panama and through Central America. FLORES-TORRUCO arranged for the resultant proceeds to be transported or transferred back along the supply chain. FLORES-TORRUCO also ordered members of the organization to use violence, including kidnapping, in dealing with competitors;

b) MENDOZA-GOMEZ planned and coordinated the movement of cocaine and drug proceeds across the border between Mexico and the United States.

c) ALFONSO PADILLA-FLORES and JOSE PADILLA-FLORES both engaged in drug-trafficking activities at the direction of FLORES-TORRUCO. These included traditional drug-trafficking activities, like moving cocaine and currency, but also planning acts of violence against competing drug traffickers.

d) RAUDA-AVILA transported cocaine in Mexico and elsewhere on behalf of the FLORES-TORRUCO DTO, utilizing his cattle transportation business as a cover for his drug trafficking activities. RAUDA-AVILA additionally invested in multi-hundred kilogram shipments of cocaine from Colombia to Guatemala and Mexico. This cocaine was destined for importation into the United States.

e) FLORES-TORRUCO and others make use of money launderers to organize financial transactions involving drug proceeds on behalf of the FLORES-TORRUCO DTO. In return, these money launderers receive a percentage of the

4

currency involved in the transactions.

## WAYS, MANNERS AND MEANS OF THE CONSPIRACY

The primary purpose of this conspiracy is to make as much money as possible by trafficking cocaine from Colombia into Central America and Mexico, and ultimately into the United States. The defendants and their co-conspirators used the following ways, manners and means, among others, to carry out this purpose:

6. It was part of the conspiracy that the defendants and their co-conspirators played different roles, took upon themselves different tasks, and participated in the affairs of the conspiracy through various criminal acts.

7. It was part of the conspiracy that the FLORES-TORRUCO DTO financed the shipment of multi-hundred kilogram and greater quantities of cocaine, from Colombian sources of supply, through Central America and Mexico.

8. It was part of the conspiracy that the FLORES-TORRUCO DTO operated in southeastern Mexico, near the border with Guatemala, to facilitate the shipment of Colombian cocaine into Mexico. It was further part of the conspiracy that members of the FLORES-TORRUCO DTO communicated with unindicted co-conspirators to financially and logistically coordinate such shipments.

9. It was part of the conspiracy that members of the FLORES-TORRUCO DTO in northern Mexico, along the border with the United States, coordinated the trafficking of cocaine and currency across the border with the United States. It was further part of the conspiracy that members of the FLORES-TORRUCO DTO communicated with unindicted co-conspirators to financially and logistically coordinate such shipments.

10. As part of the conspiracy, the FLORES-TORRUCO DTO obtained and trafficked cocaine with recurring "brand" marks and packaging.

11. It was part of the conspiracy that members and associates of the FLORES-TORRUCO DTO, including FLORES-TORRUCO and RAUDA-AVILA, would authorize financial transactions, including those in U.S. dollars, in furtherance of drug-trafficking by sharing the serial number of individual items of currency. The presentation of currency bearing the specifically shared serial number acted as a receipt to confirm the authorization to provide requested funds. This method of verification also was used to ensure that shipments of cocaine were passed only to authorized couriers.

12. It was part of the conspiracy that the FLORES-TORRUCO DTO relied on violence, including kidnapping, as a means of intimidation and retaliation to further the objectives of the conspiracy.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

13. In order to further the goals and purposes of the conspiracy, the defendants and their co-conspirators committed overt acts, including, but not limited to, the following: In and around May 2017, the FLORES-TORRUCO DTO caused two shipments of cocaine to be transported from Colombia to Panama, totaling approximately 1,064 kilograms. These shipments of cocaine were seized by law enforcement in Panama in and around May 2017.

14. On or about May 5, 2017, FLORES-TORRUCO communicated with RAUDA-AVILA about conducting financial transactions in Mexico in U.S. Dollars. RAUDA-AVILA agreed to coordinate a transfer of $450,000 in drug proceeds from the Mexico-U.S. border to Mexico City.

15. In and around May 2017, the FLORES-TORRUCO DTO caused family members of a competing drug-trafficker to be held captive at or near Monterey, Mexico, as collateral for a drug-related debt.

16. On or about May 29, 2017, JOSE PADILLA-FLORES communicated with FLORES-TORRUCO regarding the trafficking of approximately 300 kilograms of cocaine at or near Monterrey, Mexico.

17. On or about May 29, 2017, FLORES-TORRUCO and RAUDA-AVILA met in Cancun, Mexico with Colombian sources of supply for cocaine and money launderers to arrange three separate cocaine transactions, totaling approximately 836 kilograms of cocaine for approximately $5.675 million.

18. In and around June 2017, the FLORES-TORRUCO DTO caused a shipment of cocaine in Panama, totaling approximately 197 kilograms. This shipment was seized by law enforcement in Panama in and around June 2017.

19. On or about June 5, 2017, FLORES-TORRUCO communicated with MENDOZA-GOMEZ about an approximately 500 kilogram shipment of cocaine that the FLORES-TORRUCO DTO trafficked along a route from at or near Veracruz, Mexico, to a location at or near Mexico City, Mexico.

(All in violation of Title 21, United States Code, Section 963.)

## FORFEITURE NOTICE

THE GRAND JURY HEREBY FINDS probable cause that the property described in this NOTICE OF FORFEITURE is subject to forfeiture pursuant to the statutes described herein.

Pursuant to Fed.R.Crim.P. 32.2(a), the defendants, are hereby notified that if convicted of Count One of this Indictment, they shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853(a) and 970, any property constituting, or derived from, any proceeds each defendant obtained, directly or indirectly, as the result of such violation; and any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. The property subject to forfeiture includes at least $62,000,000.00 in United States currency representing proceeds the defendants obtained in the course of the drug conspiracy and property involved in the money laundering conspiracy, as alleged in Count One of this Indictment.

(Pursuant to Title 21, United States Code, Sections 853 & 970 and Fed.R.Crim.P.32.2).

A TRUE BILL

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office
Foreperson

G. Zachary Terwilliger
United States Attorney

By: _____
Michael P. Ben'Ary
David A. Peters
Assistant United States Attorneys